UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>FERMIN IGLESIAS,<br><br>　　　　　　　　　　Defendant. | Case No. 16-cr-00131-BAS-1<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE (ECF No. 305)** |

On February 21, 2019, the Court sentenced Mr. Iglesias to 60 months in custody. (ECF Nos. 239, 245.) On April 3, 2019, he self-surrendered to begin serving his sentence. After serving less than half of his sentence, Defendant now moves to reduce his sentence pursuant to Section 3582(c)(1)(A)(i). (ECF No. 305 ("Defendant's Motion").) The Government opposes (ECF No. 307 ("Government's Opposition")), and Defendant replies (ECF No. 312). For the reasons stated below, the Court **DENIES** Defendant's Motion.

**I.    BACKGROUND**

Mr. Iglesias recruited and referred workers' compensation applicants for legal and medical services. (ECF No. 307 (Presentence Report ("PSR")) ¶¶ 9–48.) He conspired to obtain money from the California Workers' Compensation System ("CWCS") by submitting claims for ancillary procedures—like MRIs and durable medical equipment—that were secured through a pattern of kickbacks and bribes. (*Id.*) He paid doctors a set

fee for their referrals and set up quotas for the number of referrals each doctor was to make. (*Id.*)  He then received kickbacks from the providers of the ancillary services.  (*Id.*)

Although Mr. Iglesias reported that he was healthy and did "not have a history of serious health problems" at the time he was interviewed for his Presentence Report (PSR ¶ 87), he has been seen repeatedly for complaints of chronic sinusitis, tinnitus, and vertigo during his time with the Bureau of Prisons ("BOP") (Government's Opposition, Exh. C). The BOP has attempted to assist Mr. Iglesias with these symptoms.  On August 30, 2019, he had a brain MRI after prescribed medications did not help with the problems.  (*Id.*)  On October 18, 2019, he was seen by an ENT who indicated that Mr. Iglesias's prognosis was guarded.  (*Id.*)  Nonetheless, on December 20, 2019, he received an ear irrigation treatment (this, on top of regular medications that he was being prescribed to try to alleviate the symptoms from which he was suffering).  (*Id.*)  On February 25, 2020, Mr. Iglesias was taken outside the BOP to meet with an audiologist.  (*Id.*)  The audiologist recommended a follow up visit in six months and an evaluation by a neurologist for an EEG.  (*Id.*) However, Mr. Iglesias's medical records reflect that "during COVID-19 pandemic, neurology is only providing tele-medicine services.  We are unable to access this service. Will cancel the consult at this time and reassess as needed."  (*Id.*)  Mr. Iglesias was most recently seen for this problem on December 15, 2020, when it was noted that a neurology consult is still only available by telemedicine, but that the target date for a future consult is March 29, 2021.  (*Id.*)

Mr. Iglesias claims he was pre-diabetic upon self-surrender and that he has high blood pressure.  (*See* ECF No. 312, Exh. 1 ("Iglesias Decl.") ¶¶ 9–10).  However, his BOP medical records show otherwise.  (Government's Opposition, Exh. C.)  On July 18, 2019, he received a full blood panel, and his blood sugar was completely normal and does not indicate diabetes.  (*Id.* at 215–17.)  His blood sugar remained low during a test on October 13, 2019.  (*Id.* at 184.)  Additionally, his blood pressure has been consistently low, ranging from 105/66 on September 26, 2019 (*id.* at 187), to 129/72 on December 18, 2019 (*id.* at 240).  Although defense counsel is correct that there have not been any recent blood

pressure measurements, Mr. Iglesias was repeatedly tested throughout 2019 and the beginning of 2020, and his blood pressure was consistently low. (*Id.*) Additionally, Mr. Iglesias himself repeatedly denied to medical professionals that he had any diabetes or hypertension. (*Id.* at 42, 46, 57.) And the BOP has assessed that Mr. Iglesias "is not [part of] a high risk population for complications from COVID-19." (*Id.* at 68, 70.)

Finally, although Mr. Iglesias claims that he is obese, weighing 240 pounds (Iglesias Decl. ¶ 11), again, his medical records do not support this claim. Medical records reflect a weight around 190 pounds. (Government's Opposition, Exh. C at 54.) Admittedly, the most recent weight was taken on March 24, 2020; however, Mr. Iglesias weighed consistently 195 pounds or less for most of the time he has been in custody. (*Id.*) He provides no proof to counter the medical records and to support his claim that his weight has suddenly ballooned 50 pounds.

FCI Herlong, where Mr. Iglesias is being housed, indicates no inmates are currently testing positive for COVID-19 and six staff members are testing positive. *See* BOP Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Feb. 16, 2021). No inmates or staff have died from the disease at this facility. *Id.*

Although the Government claims the Warden at the facility where Mr. Iglesias is being housed has never received a compassionate release request from him, Mr. Iglesias claims he wrote to the Warden both on December 17 and December 19, 2020, requesting compassionate release, and has received no response. (Iglesias Decl. ¶¶ 2–4; Defendant's Motion Exh. D.)

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States,* 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Iglesias must fully exhaust his administrative remedies from the warden of the facility where he is being housed before he turns to the court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapses and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Although the Government claims the Warden has never received a compassionate release request from Mr. Iglesias, Mr. Iglesias submits a declaration that he did send this request two times to the Warden at the facility where he is being housed. (Iglesias Decl. ¶¶ 2–4; Defendant's Motion Exh. D.) Since Mr. Iglesias claims he never received a response to this request, the Court is prepared to find that he has exhausted his administrative remedies.

### B.    Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden,* 452 F. Supp. 3d 964, 966 (D. Or. 2020).

First, the Court acknowledges what ought to be obvious by now: COVID-19 is posing a serious threat throughout the United States, but particularly within the BOP

system. Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has made it difficult to keep the virus contained. However, the facility where Mr. Iglesias is currently being housed does not have any inmates who are testing positive for the coronavirus. And the Government provides evidence that the COVID-19 vaccine is in the process of being distributed to BOP inmates.

Defendant claims he is entitled to compassionate release because he is at high risk for complications from COVID-19 because of his: (1) untreated diabetes; (2) high blood pressure; (3) extreme vertigo; (4) untreated tinnitus; (5) chronic and persistent sinus blockage that interferes with his breathing and causes asthmatic symptoms; (6) neurological difficulties for which he has been awaiting an EEG for over a year; and (7) obesity. Defendant submits insufficient evidence supporting his claims of diabetes or high blood pressure. In fact, the medical records submitted by the Government show completely normal blood sugar tests, no diabetes, and regular blood pressure tests that are low.

Additionally, although Mr. Iglesias claims he is obese with a weight of 240 pounds, he provides no evidence that supports this claim. And the medical records submitted by the Government show a weight that is fifty pounds less than that claimed by Mr. Iglesias. Therefore, the Court finds he has failed to meet his burden of showing that COVID-19 poses an increased risk to him because of any obesity.

What Mr. Iglesias's medical records do demonstrate is that he has struggled with chronic nasal congestion, ringing in the ears, and vertigo. He has been seen repeatedly by medical professionals attempting to help with these problems. His treatment has included medications that attempt to deal with the symptoms, a brain MRI, ear irrigation, ENT evaluations, and an outside audiology consultation. None of these interventions has apparently helped. His ear canals and ear drums were intact; his brain MRI was normal. And eventually, the ENT concluded that there is no specific treatment recommended, other than follow up appointments and that Defendant's prognosis is guarded. It is true that the outside audiologist recommended that Defendant be referred to a neurologist for an EEG.

1  However, as of July 24, 2020, his medical records reflect that "during COVID-19
2  pandemic, neurology is only providing tele medicine services.  We are unable to access
3  this service.  Will cancel the consult at this time and reassess as needed."  The current
4  targeted date for the neurology consult is March 29, 2021.  And there is no documentation
5  that supports Defendant's claims that his sinus blockage "interferes with his breathing and
6  causes asthmatic symptoms."

7  The Court concludes that Mr. Iglesias is being adequately treated for his tinnitus,
8  sinusitis, and vertigo.  He has also failed to provide evidence that he is at increased risk
9  were he to contract COVID-19.

### III. CONCLUSION

Since Mr. Iglesias has failed to demonstrate that "extraordinary and compelling reasons" justify his request to be released early from custody, the Court **DENIES** his Motion to Reduce His Sentence. (ECF No. 305.)

**IT IS SO ORDERED.**

**DATED: February 18, 2021**

Hon. Cynthia Bashant
United States District Judge